IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TARESS MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. |
| ) | |
| DENIS McDONOUGH, Secretary ) | |
| UNITED STATES DEPARTMENT OF ) | |
| VETERANS AFFAIRS, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## 1ST AMENDED COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Taressa Morgan, by and through her undersigned counsel, and files this Complaint for damages for her causes of action against Defendant the United States Department of Veterans Affairs. Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.

2. As this Complaint asserts federal causes of action arising under the laws of the United States, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

3. Plaintiff was employed by the Defendant in Kansas City, Missouri. Pursuant to 28 U.S.C. § 1369, venue properly lies in this judicial district in that the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Western District of Missouri, specifically in Kansas City, Missouri, and the Defendant is a government employer that is subject to the jurisdiction of this Court.

## PARTIES

4. Plaintiff, Taressa Morgan, is a United States citizen. She resides in Missouri.

5. Plaintiff is an African-American female with a who has participated in protected activity.

6. Defendant McDonough, in his capacity as Secretary of the VA, is located in Washington, D.C.

7. United States Department of Veterans Affairs, Kansas City Veterans Administration Hospital (hereafter "KCVA") is located at 4801 Linwood Boulevard, Kansas City, Missouri.

## ADMINISTRATIVE PROCEDURES
## CASE NO. 200J-0589-2022-144110

8. After timely initiating an informal administrative complaint on February 3, 2022, Plaintiff agreed to ADR which was ultimately unsuccessful. She received her Right to File Formal on or about March 10, 2022 and filed her formal complaint of discrimination on March 15, 2022. That administrative Complaint of Discrimination was assigned Case No. 200J-0589-2022-144110.

9. Plaintiff's administrative Complaints of Discrimination alleged that she was discriminated against on the basis of her race.

10. Plaintiff has exhausted all administrative remedies in that on August 11, 2023, the Defendant issued its Final Agency Decision on Plaintiff's Claims.

11. Plaintiff timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision.

12. All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of her Complaints of Discrimination and they reasonably followed

from the allegations contained in the administrative complaints of discrimination, reprisal and retaliation.

13. Pursuant to 42 U.S.C. § 2000e-16©, Plaintiff therefore invokes her right to bring this civil action in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

### CASE NO. 200J-0589B-2023-151330

14. After timely initiating an informal administrative complaint on March 29, 2023, Plaintiff agreed to ADR which was ultimately unsuccessful. She received her Right to File Formal on or about June 12, 2023 and filed her formal complaint of discrimination on June 23 2023, 2022. That administrative Complaint of Discrimination was assigned Case No. 200J-0589B-2023-151330.

15. Plaintiff's administrative Complaints of Discrimination alleged that she was discriminated against on the basis of her race, color, age and reprisal.

16. Plaintiff has now exhausted all administrative remedies. She has requested a Final Agency Decision (FAD) in this matter and received it on March 29, 2024.

17. Plaintiff timely filed this lawsuit within 90 days of the receipt of her first Final Agency Decision and is amending it within 90 days of the receiving the second Final Agency Decision.

18. All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of her Complaints of Discrimination and they reasonably followed from the allegations contained in the administrative complaints of discrimination, reprisal and retaliation.

19. Pursuant to 42 U.S.C. § 2000e-16©, Plaintiff therefore invokes her right to bring this civil action in that she is satisfying or has satisfied all administrative and judicial prerequisites to the institution of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

20. Plaintiff is an African-American female.

21. Plaintiff is employed as a Nurse Manager 3-11, Kansas City VA Medical Center (VAMC), Kansas City, Missouri.

22. Plaintiff's first line supervisor is Carli King, Associate Chief Nurse, Primary Care. Ms. King, Dr. Stephanie Thompson, Dr. Schenkelberg and Dr. Waller subjected Plaintiff to discrimination / disparate treatment, a hostile work environment and retaliatory harassment and reprisal.

23. Plaintiff's responsibilities as the RN Nurse Manager including overseeing day to day clinical operations, which includes but is not limited to the following:

   a. Performing annual evaluations;

   b. Coaching and mentoring employees;

   c. Assisting in providing staffing coverage throughout the clinic;

   d. Addressing concerns of staff and veterans;

   e. Insuring LPN and RN staff adhere to organizational policies and procedures in an effort to provide optimal quality care for veterans;

   f. And ensuring the clinic runs smoothly and efficiently;

   g. Other duties as required by the circumstances or as assigned.

24. She has been singled out for discrimination, harassment and reprisal based upon her race, age, color and retaliation.

## Hostile Work Environment

25. Plaintiff's supervisor became aware of Complainant's race, color and age even before she became Plaintiff's supervisor as they worked together prior to becoming Plaintiff's manager.

26. Since 2017, Plaintiff has been continuously subjected to discriminatory treatment.

27. Plaintiff is the only African American nurse manager in her chain of command.

28. She and her supervisors are supposed to act in a coordinated manner to determine the appropriate care for each and every patient.

29. Plaintiff's supervisors and the medical provider she served, Dr. Thompson, frequently left her out of communications, office emails and decision-making that is imperative for her to be able to effectively function in her position.

30. Since 2017, Plaintiff has been continuously subjected to discriminatory treatment by her upper management. Examples of the continuous discriminatory treatment include the following events:

   a. Dr. Thompson often reached out to two of the Caucasian charge nurses who worked under plaintiff to voice concerns about staffing but would not include plaintiff in the discussions. Plaintiff is assigned to assist in staffing decisions and coverage as she is the nurse manager for the clinic.

   b. Dr. Thompson's actions have alienated Plaintiff from staff and from the clinical operations.

   c. Plaintiff expressed her concerns to Dr. Thompson's supervisors, but no effective remedial measures were taken.

d. Plaintiff has requested to be included on email chains and other communications that impact her ability to do her job and on which Caucasian co-workers are included, but she continues being excluded from those communications.

e. The Caucasian co-workers are called by their names, but Plaintiff is referred to as the Linwood PC Nurse Manager.

f. On November 8, 2021, Plaintiff was excluded from communications relating to coverage by new employees. Plaintiff had a need to know this information for staffing purposes, which is part of her job duties.

g. On November 9, 2021 and December 9, 2021 and January 7, her supervisor communicated with the Caucasian charge nurses to voice concerns about staffing but did not include Plaintiff in those discussions although staffing is her job duty.

h. On December 6, 2021, Dr. Thompson received an email regarding one of the nurses under Plaintiff's supervision. While Dr. Thompson forwarded to Dr. Schenkelberg and Dr. Waller, Plaintiff did not receive it until February 2, 2022 although she is in charge of the nurses in Primary Care.

i. On February 2, 2022, Plaintiff addressed the ongoing problems of not receiving communications and being intentionally deleted from email chains regarding information necessary for her position but without any remedial measures being taken.

j. On February 5, 2022, after Plaintiff addressed the ongoing problems of communication, Dr. Thompson refused to send Plaintiff a secure message from a veteran, instead sending it to Dr. Waller with an explanation.

k. On June 8, 2022, after continuing issues regarding being able to do her job in light of the continuing refusal to communicate issues to her, Carli King told her that she assumed Plaintiff was difficult to work with.

l. When Jeremy, an individual who works in HR, complimented Plaintiff to her supervisor for being "nice," Ms. King asked if they were talking about the same person.

m. Ms. King has attempted to paint Plaintiff as an angry black woman.

31. Dr. Thompson is an abrasive individual, but she treats people of color with derision and has had complaints of discrimination filed against her.

32. No other white employees have been treated in manner. Out of approximately 200 employee, Plaintiff is the only African American in a leadership role in Primary Care at the KCVA.

33. When Plaintiff or other persons of color, including Aisha Zziwa, complained of Dr. Thompson's behavior toward them, their complaints were unheeded. Yet, when a single Caucasian nurse complained about Dr. Thompson, Dr. Thompson's actions were investigated.

34. Plaintiff has been counseled regarding the "float" schedule for nurses, but she has been thwarted in her efforts to maintain a float schedule by a Caucasian nurse manager who is allowed to take nurses off the schedule for her own purposes, causing issues in coverage.

35. Dr. Thompson has a pattern of consulting the white nurse managers regarding Plaintiff's staff instead of consulting plaintiff. This creates undercutting and an inability to properly supervise her staff.

36. Plaintiff has witnessed her upper management and providers mistreating other people of color, especially African Americans.

7

37. On July 12 2022, Plaintiff received a Notice of Acceptance of her EEO complaint numbered 200J-589-2022-144110 determining that her harassment claim passes the severe or pervasive requirement for further processing.

38. Plaintiff received a Notice of Acceptance of her EEO complaint numbered 200J-589B-2023-151330 determining that her harassment claim passed the severe or pervasive requirement for further processing and included the retaliation claims.

*Retaliation, Reprisal, Retaliatory Harassment*

39. Ever since Plaintiff complained about her treatment, Plaintiff has been subjected to a heightened level of scrutiny and retaliatory harassment.

40. Since on or about November 7, 2022 and continuing, Plaintiff's direct supervisor and Associate Chief, Nurse of Primary Care ignores plaintiff's calls, texts and emails and will not provide answers to questions she has regarding work;

41. Since on or about November 7, 2022 and continuing, Plaintiff's direct supervisor and Associate Chief Nurse of Primary Care refuses to provide Plaintiff with the list of clinical reminders necessary for her job.

42. On November 9, 2022, Plaintiff's supervisor was so abrupt and rude to plaintiff specifically that co-workers sent emails regarding the interaction.

43. On March 14, 2023, a co-worker sent a racially insensitive email to everyone in the email chain, including Eddaliss Gonzalez – Ruiz, Nurse Executive. Ms. Gonzalez-Ruiz took no action regarding that racially charged email.

44. On July 27, 2023, the Department of Veteran's Affairs sent a Notice of Acceptance for the EEO complaint of Taressa Morgan, Case No. 200J-589B-2023-151330

8

Case 4:23-cv-00830-SRB   Document 7-1   Filed 06/27/24   Page 8 of 16

finding that the allegations in her complaint passed the severe and pervasive requirement for further processing.

## COUNT 1: RACE, COLOR PLUS AGE DISCRIMINATION
### DISPARATE TREATMENT

45. Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

46. Plaintiff, an African-American female, is a member of a protected class.

47. She was qualified for the position she held at the KCVA and met her employer's legitimate performance expectations.

48. Plaintiff suffered adverse job actions when management engaged in the actions including but not limited to:

   a. Dr. Thompson often reached out to two of the Caucasian charge nurses who worked under plaintiff to voice concerns about staffing but would not include plaintiff in the discussions. Plaintiff is assigned to assist in staffing decisions and coverage as she is the nurse manager for the clinic.

   b. Dr. Thompson's actions have alienated Plaintiff from staff and from the clinical operations.

   c. Plaintiff expressed her concerns to Dr. Thompson's supervisors, but no effective remedial measures were taken.

   d. Plaintiff has requested to be included on email chains and other communications that impact her ability to do her job and on which Caucasian nurse managers are included, but she continues being excluded from those communications.

e. The Caucasian nurse managers are called by their names, but Plaintiff is referred to as the Linwood PC Nurse Manager.

f. On November 8, 2021, Plaintiff was excluded from communications relating to coverage by new employees. Plaintiff had a need to know this information for staffing purposes, which is part of her job duties.

g. On November 9, 2021 and December 9, 2021. January 7, her supervisor communicated with the Caucasian charge nurses to voice concerns about staffing but did not include Plaintiff in those discussions although staffing is her job duty.

h. On December 6, 2021, Dr. Thompson received an email regarding one of the nurses under Plaintiff's supervision. While Dr. Thompson forwarded to Dr. Schenkelberg and Dr. Waller, Plaintiff did not receive it until February 2, 2022 although she is in charge of the nurses in Primary Care.

i. On February 2, 2022, Plaintiff addressed the ongoing problems of not receiving communications and being intentionally deleted from email chains by her supervisors regarding information necessary for her position but without any remedial measures being taken.

j. On February 5, 2022, after Plaintiff addressed the ongoing problems of communication, Dr. Thompson refused to send Plaintiff a secure message from a veteran, instead sending it to Dr. Waller with an explanation.

k. On June 8, 2022, after continuing issues regarding being able to do her job in light of the continuing refusal to communicate issues to her, Carli King told her that she assumed Plaintiff was difficult to work with.

l. When Jeremy, an individual who works in HR, complimented Plaintiff to her supervisor for being "nice," Ms. King asked if they were talking about the same person.

m. Ms. King has attempted to paint Plaintiff as an angry black woman.

n. Since on or about November 7, 2022 and continuing, her supervisor ignores her calls, texts and emails, will not provide answers to questions she has regarding work and failed to provide her the list of clinical reminders required for her position.

o. On November 9, 2022, Plaintiff's supervisor was so rude to Plaintiff that other employees noticed and commented and her supervisor stated in the huddle with other employees that not responding to emails does not create a hostile working environment.

p. Plaintiff's supervisor failed to take immediate and effective action when a co-worker made a comment about working like a Hebrew slave.

q. Plaintiff is aware of and has observed a systematically racist undertone at the Kansas City VAMC, including individuals being called the N word, ho, nappy headed, black bitches, boy, Aunt Jemima, spook and other racial slurs.

r. Other similar actions arising out of the investigation of these complaints.

49. The Agency and Management Officials treated similarly situated Caucasian employees more favorably than they did Plaintiff.

50. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

11

Case 4:23-cv-00830-SRB   Document 7-1   Filed 06/27/24   Page 11 of 16

## COUNT 2  HOSTILE ENVIRONMENT BASED ON RACE, COLOR AND AGE
## ALL DEFENDANTS

51. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–44.

52. During the course of Plaintiff's employment with the Defendant, Plaintiff experienced a hostile environment based upon her race, color, and national origin in that:

    a. Plaintiff was subjected to harassment;

    b. The harassment was unwelcome;

    c. The harassment was based upon Plaintiff's race, color and / or plus age;

    d. The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

    e. At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive;

    f. Defendants knew or should have known of the harassment; and

    g. Defendants failed to take prompt, appropriate corrective action to end the harassment.

53. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 3: RETALIATION
## ALL DEFENDANTS

54. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–43.

55. Plaintiff complained to Defendants her concerns that she was being discriminated against directly and through her EEO informal counseling as well as her later formal complaint.

56. Plaintiff reasonably believed that she was being harassed and/or discriminated against on the basis of race, color and / plus age.

57. Defendant engaged in adverse actions against the Plaintiff including but not limited to the following actions:

    a. Making false allegations / insinuations regarding Plaintiff's work and conduct;

    a. Undermining her work so that she could not be successful;

    b. Other events as set forth in the Statement of Facts.

58. Plaintiff's complaints of racial harassment and/or discrimination were contributing and/or motivating factors in the adverse actions taken against Plaintiff.

59. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue judgment against the Defendants for all the damages that Plaintiff has incurred, including without limitation, physical and personal injury, emotional distress, back pay,

13

Case 4:23-cv-00830-SRB   Document 7-1   Filed 06/27/24   Page 13 of 16

future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the Plaintiff is entitled;

    2.    Issue judgment against the Defendants for equitable or injunctive relief including returning Plaintiff to a position commensurate to that from which she was terminated;

    3.    Award Plaintiff her reasonable attorneys' fees, costs, and expenses;

    4.    Award to Plaintiff any and all such further relief as may be equitable and just.

Respectfully submitted,


*/s/ Rebecca M. Randles*
REBECCA M. RANDLES          MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Gladstone, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of this document was duly served on this 27th day of July via the Court's electronic filing and notification service to all of those who are registered users on this matter.

*/s/ Rebecca M. Randles*
Attorney for Plaintiff